Cite as 2023 Ark. App. 503

# ARKANSAS COURT OF APPEALS

DIVISION I

No. CR-22-407

| | | |
|---|---|---|
| GEORGE GITCHELL | | **Opinion Delivered** November 1, 2023 |
| | APPELLANT | APPEAL FROM THE HOT SPRING COUNTY CIRCUIT COURT [NO. 30CR-21-149] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE CHRIS E WILLIAMS, JUDGE |
| | | AFFIRMED |
| | APPELLEE | |

## WAYMOND M. BROWN, Judge

Appellant George Gitchell was found guilty by a Hot Spring County Circuit Court jury of second-degree battery. He was sentenced as a habitual offender to a term of thirteen years' incarceration in the Arkansas Department of Correction. On appeal, Gitchell argues that the circuit court erred (1) in denying his motion to dismiss as the result of an alleged discovery violation; and (2) in denying his directed-verdict motion.[1] We affirm.

On June 4, 2021, Gitchell was charged by information with battery in the second degree, a Class D felony, in violation of Arkansas Code Annotated section 5-13-202(a)(4)(c),[2] and with being

---

[1]We previously ordered rebriefing due to deficiencies in the statement of the case presented on appeal. *See Gitchell v. State*, 2023 Ark. App. 181.

[2](Supp. 2023).

a habitual offender pursuant to Arkansas Code Annotated section 5-4-501[3] due to his criminal history of four or more prior felony convictions.

Michael Loy, seventy-five years old, alleged that on May 6, while sitting in his living room, he heard someone banging on the side of his mobile home. Upon investigation, Loy observed Gitchell standing outside pounding on his residence. When Loy approached Gitchell and told him to leave his property, Gitchell charged toward him, hitting Loy in the face. Gitchell then proceeded to attack Loy, punching him in the head, chest, and upper torso area, causing numerous injuries. The State charged Gitchell with second-degree battery, alleging that he knowingly and without legal justification caused physical injury to an incapacitated person he knew to be an individual sixty years of age or older.

On December 2, the day before trial, while reinterviewing Loy, the State discovered that Loy has a criminal history that it had previously been unaware of. Shortly thereafter, at approximately three o'clock that afternoon, the State emailed Gitchell's counsel and disclosed Loy's felony convictions: a 1963 robbery conviction; a 1990 domestic-battery conviction; and a 1991 conviction for solicitation of first-degree murder.

The following morning, Gitchell moved to dismiss on the basis of the alleged discovery violation. He alleged that the State's late disclosure of Loy's criminal convictions and failure to provide judgment and commitment orders reflecting the convictions constituted a failure to appropriately respond to his motion for discovery. The State replied that Loy would testify and admit

---

[3](Supp. 2023).

the felony convictions. In denying Gitchell's motion to dismiss, the circuit court granted Gitchell latitude to cross-examine Loy concerning the details of his convictions.

During the trial, Loy testified that Gitchell, who dated his stepdaughter, physically attacked him at his home, causing him to suffer injuries. Loy also admitted that he has a criminal history. On direct-examination, the following questioning took place:

> Q. Okay. And, Mr. Loy, I want to ask you, the jury has already heard. Do you have a criminal history in your background?
>
> A. Yes, ma'am.
>
> Q. Can you tell us about that?
>
> A. '64 I was convicted. I don't even remember what the charge was. And sometime in the '80's the wife and I had a – – not this wife, another one – – had a dispute and I wound up going down for 18 months on a, whatever that charge is. And then in '90 I went down for solicitation to commit first degree murder on a man that had messed my family up.
>
> Q. Okay. And were all those cases in Garland County?
>
> A. Yes, ma'am.
>
> Q. And you said you served 16 years on that solicitation of a murder case. Is that correct?
>
> A. Yes, ma'am.
>
> Q. Okay. Are you still on parole or any type of supervision?
>
> A. No, ma'am. I've been off for 15 years.
>
> Q. Okay. And so no criminal trouble, speaking on your own behalf no criminal involvement or any charges in the last 15 years since you've been out. Is that correct?
>
> A. None.

On cross-examination, Loy admitted that in 1991, he was sentenced to forty-two years for solicitation to commit first-degree murder. He stated that because a friend of his had been "running

around" with his wife, he gave a man a bomb to kill the friend. Loy further admitted to a 1989 conviction for terroristic threatening. He stated, "That one was with my wife."[4] Last, Loy admitted that in 1964, he was incarcerated for robbery. Gitchell further questioned, "And then in '64 you also went down for assault with intent to kill. Is that correct?" Loy explained that he "[r]obbed a liquor store and the boy with me shot a man." He stated that he wasn't sure if he was convicted of robbery, assault, or both stemming from that incident, claiming, "I don't remember that far back."

At the close of the State's case, Gitchell moved for a directed verdict. He argued that the testimony established that Loy was the aggressor and Gitchell had legal justification to defend himself. The circuit court denied the motion. Without calling any witnesses, Gitchell rested and renewed his directed-verdict motion, which the circuit court again denied.

At that time, Gitchell requested a justification instruction. Ruling that there was no proof presented of self-defense, the circuit court denied the instruction. Counsel proffered AMI Crim. 2d 704, "Justification—Use of Physical Force in Defense of a Person." The jury found Gitchell guilty of second-degree battery and sentenced him as a habitual offender to serve thirteen years in prison. This appeal followed.

On appeal, Gitchell asserts the circuit court erred in denying his directed-verdict motion because there was insufficient evidence to support the conviction. Although it is his second point, we must consider Gitchell's sufficiency argument first on appeal, as preservation of Gitchell's right against double jeopardy requires this court to consider challenges to the sufficiency of the evidence

---

[4]Gitchell's counsel referred to this conviction as terroristic threatening; however, the State identified it as a domestic-battery conviction.

4

before alleged trial error is considered, even if the sufficiency-of-the-evidence issue is not presented as the first issue on appeal.[5]

We treat a motion for a directed verdict as a challenge to the sufficiency of the evidence.[6] When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only the evidence that supports the verdict.[7] We will affirm a judgment of conviction if substantial evidence exists to support it.[8] Substantial evidence is evidence of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other without resorting to speculation or conjecture.[9] We defer to the jury's determination on the matter of witness credibility.[10] Jurors do not and need not view each fact in isolation; rather, they may consider the evidence as a whole.[11] The jury is entitled to draw any reasonable inference from circumstantial evidence to the same extent that it can be from direct evidence.[12] The jury may resolve questions of conflicting testimony and inconsistent evidence and may choose to believe the

---

[5] *See Lewis v. State*, 2017 Ark. App. 442, 528 S.W.3d 312.

[6] *Kelley v. State*, 103 Ark. App. 110, 286 S.W.3d 746 (2008).

[7] *Id*.

[8] *Id*.

[9] *Id*.

[10] *Id*.

[11] *Id*.
[12] *Id*.

State's account of the facts rather than the defendant's.[13]  We need consider only that testimony that supports the guilty verdict.[14]

Gitchell contends that the evidence proved Loy was the aggressor, and Gitchell was defending himself.  He argues Loy testified that when he opened the door to his home, he saw Gitchell leaving the property, yet Loy got in his truck and followed Gitchell.  He argues that the only evidence presented at trial "was the testimony of the [S]tate's witness, an admitted wife beater, attempted murderer and convict.  He violated his probation and went to prison three times."

A person commits second-degree battery if he "knowingly, without legal justification, causes physical injury to  . . . a person . . . he knows to be . . . [a]n individual sixty (60) years of age or older[.]"[15]  A person is justified in using physical force to defend himself from what the person reasonably believes to be the use or imminent use of unlawful physical force.[16]  Whether one is justified is largely a matter of the defendant's intent and is generally a factual question for the jury.[17]  The jury is free to accept or reject any part of a witness's testimony, and credibility and the weight

---

[13]*Dunn v. State*, 371 Ark. 140, 264 S.W.3d 504 (2007).

[14]*Holcomb v. State*, 2014 Ark. 141, 432 S.W.3d 600.

[15]Ark. Code Ann. § 5-13-202(a)(4)(C) (Supp. 2023).

[16]Ark. Code Ann. § 5-2-606(a)(1) (Supp. 2023).

[17]*Brown v. State*, 2020 Ark. App. 198, 595 S.W.3d 456.

to give any evidence are issues left solely to the jury.[18]  The uncorroborated testimony of a State's witness is sufficient to sustain a conviction.[19]

Loy testified that, at the time of trial, he was seventy-six years old.  He stated that when he heard someone beating on the wall of his home, he walked out onto the porch and saw Gitchell walking across the yard.  Loy testified that when he saw Gitchell get behind his storage building, he [Loy] got in his truck and drove over there to "scold him a little."  Loy testified that Gitchell then ran at him and "hit [him] up side the head." "He was sitting on top of me" and then "got to whooping on me."  When questioned about his injuries, Loy stated, "Well, [I was] just skinned up and scraped up, head busted over here.  And elbows and arms where he had me down on the ground."  Loy further testified that he did not attack Gitchell; Gitchell attacked him.  Viewed in the light most favorable to the State, sufficient evidence supports Gitchell's conviction for second-degree battery.  To the extent Gitchell challenges Loy's credibility based on his prior criminal history, we find no error.  Matters of credibility are the province of the jury.[20] The jury was free to accept or reject Loy's version of events, which included that Gitchell was the aggressor, and there was no justification for his use of physical force.

For his next point, Gitchell argues that the State committed a *Brady*[21] violation by failing to disclose the criminal history of Loy, the complaining witness, and failing to provide judgment and

---

[18]*Id.*

[19]*Watkins v. State*, 2009 Ark. App. 124, 302 S.W.3d 635.

[20]*Brown*, s*upra*.

[21]*Brady v. Maryland*, 373 U.S. 83 (1963).

commitment orders reflecting the convictions; and the circuit court subsequently erred in "not dropping charges" as a sanction for the violation.

It is a *Brady* violation if the defense was prejudiced because the State wrongfully withheld evidence from the defense prior to trial.[22] There are three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued.[23]

In support of his *Brady*-violation argument, Gitchell asserts that in his discovery motion, he requested any record of prior criminal convictions of any person the prosecuting attorney intended to call as a witness at any hearing or at the trial of this case. Gitchell further asked for any and all records and information showing prior misconduct or bad acts committed by any state witness, including but not limited to, the personnel files of all law enforcement witnesses. Gitchell argues that after 3:00 p.m. the day before trial, the State supplied a witness list via email stating that its witness, Loy, has a criminal record. Three prior convictions were listed for Loy; however, no judgment and commitment orders were provided.

We note two issues regarding Gitchell's argument on appeal. First, before the circuit court, Gitchell failed to make a *Brady* argument. He at no time made reference to *Brady* or the duty to disclose exculpatory or impeaching evidence thereunder. Gitchell asserted a violation only because the State failed to fully respond to his discovery motion. It was the circuit court, in its ruling on

---

[22]*Mosley v. State*, 2018 Ark. 152, 544 S.W.3d 55.

[23]*Carner v. State*, 2018 Ark. 20, 535 S.W.3d 634.

Gitchell's motion to dismiss, that hinted at *Brady*, stating, "[I]t's almost a *Brady* violation situation. But it's not." We will not consider arguments raised by an appellant for the first time on appeal.[24]

Second, without specifically identifying Arkansas Rule of Criminal Procedure 17.1 before the circuit court, Gitchell moved to dismiss in light of the alleged discovery violation for the State's failure to disclose Loy's criminal history prior to the eve of trial. On appeal, he briefly calls attention to Rule 17.1 and then proceeds to cite only *Brady* caselaw.

We note that, while similar, the duty to disclose pursuant to *Brady* is not identical and interchangeable with a prosecuting attorney's obligations to disclose under Rule 17.1, though they may encompass some of the same material. It appears that in his brief, Gitchell conflates the two arguments without adequately addressing either. Notably, however, both a *Brady* and a Rule 17.1 discovery violation require a showing of prejudice. Out of an abundance of caution, we continue the analysis.

The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion.[25] Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration.[26] It is within the circuit court's discretion which sanction, if any, to employ.[27] Furthermore, a reversible discovery violation will occur only if a

[24]*Braud v. State*, 2022 Ark. 169.

[25]*Barrow v. State*, 2010 Ark. App. 589, 377 S.W.3d 481.

[26]*Jackson v.* State, 2020 Ark. App. 379, 609 S.W.3d 418.

[27]*Barrow*, s*upra*.

9

defendant is prejudiced by the prosecutor's failure to disclose.[28] In order to show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed.[29] Under these standards, appellant has the burden to show that the omission was sufficient to undermine the confidence in the outcome of the trial.[30]

Gitchell contends that he was prejudiced "by not being able to determine exactly what was in the State's witness's criminal history." He argues that, without the judgment and commitment orders, he had to rely on the witness for what information was contained in his criminal history and that impeachment of the witness, Loy, rested entirely on Loy's own testimony.

The State counters that it disclosed Loy's criminal history as soon as it became aware of it; therefore, there was no discovery violation. The State asserts that the disclosure, albeit late, complies with the State's obligations under the Arkansas Rules of Criminal Procedure. Arkansas Rule of Criminal Procedure 17.1(a)(vi)[31] requires a prosecuting attorney to disclose any record of prior criminal convictions of persons whom the prosecuting attorney intends to call as a witness at any hearing or at trial, if the prosecuting attorney has such information. If before trial, . . . a party discovers additional material or information comprehended by a previous request to disclose, he shall

---

[28]*Robinson v. State*, 317 Ark. 512, 879 S.W.2d 419 (1994).

[29]*Lee v. State*, 340 Ark. 504, 11 S.W.3d 553 (2000).

[30]*Id.*

[31](2021).

promptly notify opposing counsel . . . of the existence of such material or information.[32]  The State

argues that this is precisely what it did.

Here, it is clear that no discovery violation occurred.  In discovery, Gitchell requested the

information at issue.  The State notified opposing counsel and disclosed the information concerning

Loy's criminal background shortly after its existence became known.  Though receiving discovery

material on the eve of trial is not ideal, the State complied with the requirements of Rule 17.1.

Furthermore, even if a discovery violation did occur, in order for it to constitute reversible error,

Gitchell must prove that he was prejudiced by the State's failure to disclose the material.  We hold

that he has failed to do so.

Loy was the complaining witness, and as such, his existence was at all times known to the

defense.  Additionally, Loy was not only present during the trial, but he also testified, admitted his

felony convictions, and was subjected to extensive cross-examination.  The circuit court gave Gitchell

wide latitude to question Loy regarding his prior convictions and criminal history, which he took full

advantage of, delving into the details of his serious crimes and portraying Loy as an angry and violent

person who "tr[ies] to kill people."  Moreover, prior to the start of trial, Gitchell moved for dismissal

in light of an alleged discovery violation.  In *State v. Vasquez-Aerreola*,[33] the Arkansas Supreme Court

held that "the dismissal of the charge as a discovery sanction under Rule 19.7 violated the separation

of powers."  Therefore, the circuit court lacked the authority to dismiss the charges, as urged by

Gitchell.  Gitchell could have moved for a continuance to obtain the judgment and commitment

---

[32]Ark. R. Crim. P. 19.2.

[33]327 Ark. 617, 940 S.W.2d 451 (1997).

orders related to Loy's convictions to verify the accuracy and truthfulness of his testimony; however, he did not do so. Further, evidence of a conviction is generally not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction.[34] Here, Loy's prior convictions date back to 1963, with the most recent conviction occurring in 1991, for which he served sixteen years, well past the ten-year window of admissibility for convictions. Gitchell has not only failed to demonstrate that he was prejudiced by the disclosure of Loy's criminal history on the eve of trial, but the circuit court lacked the authority to grant the requested relief.

For the reasons stated above, we affirm Gitchell's convictions and the resulting sentence.

Affirmed.

WOOD and MURPHY, JJ., agree.

*Gregory Crain*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Joseph Karl Luebke*, Ass't Att'y Gen., for appellee.

---

[34]Ark. R. Evid. 609(b).