Cite as 2025 Ark. App. 176

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CR-24-214

| | | |
|---|---|---|
| MICHAEL MOORE | | Opinion Delivered March 19, 2025 |
| | APPELLANT | APPEAL FROM THE POLK COUNTY CIRCUIT COURT [NO. 57CR-22-173] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE ANDY RINER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

Following a two-day jury trial beginning on October 16, 2023, the Pope County Circuit Court convicted Michael Moore of rape and sentenced him to forty years in the Arkansas Division of Correction.  He appeals his conviction, asserting that the circuit court erred in allowing two witnesses to testify pursuant to the pedophile exception to Arkansas Rule of Evidence 404(b).  Moore also argues that the circuit court erred in allowing one of the witnesses to testify when the State had not properly disclosed her contact information and expected testimony as required by Arkansas Rule of Criminal Procedure 17.1. We affirm.

According to the testimony at trial, Minor Victim (MV) and Moore are first cousins. When MV was young, her family spent a lot of time visiting Moore's family, often late into the night. On one of these visits, when MV was only seven years old and Moore was eighteen,

MV went to sleep in Moore's bedroom. Moore entered the bedroom, ripped MV's pajamas from her body, and raped her. He told MV not to tell anyone.

A few years later, at MV's birthday party the year she turned ten, MV was changing clothes alone in her bedroom when Moore entered the room. As he approached MV, he said, "It's just like last time." MV responded, "no." At that point another family member entered the room and asked Moore what he was doing; he stated he was looking for the bathroom.

MV kept these events to herself until she was fourteen years old, when during an argument with her parents, MV blurted out what Moore had done to her when she was seven. MV's parents sought counseling for MV. The counselor reported Moore's actions to law enforcement, and MV and her family cooperated with the investigation.

Moore has two other female cousins who testified at trial that he had sexually assaulted them. One of the cousins, Jaden, was adopted by her grandparents, who were also Moore's grandparents. At one time, he lived in a camper in their yard. Jaden testified that when she was five years old, Moore[1] lay down in her bed with her and put his hand inside her pants, touching her skin in the genital area. This happened several more times while Jaden was five years old. According to Jaden, Moore molested her for the last time when she was eleven years old by again putting his hand inside her pants and touching her vagina. This occurred in his camper while other cousins were present.

---

[1]Moore would have been approximately twelve years old when this incident occurred.

Moore's other cousin, Jessica, testified she also was sexually assaulted by Moore in his camper the same night as Jaden. Jessica testified that Moore served her alcohol to the point that she passed out and woke up while Moore was raping her. She tried to tell him no and to resist but was unsuccessful. When she woke up the next morning, she was naked and in pain. Jessica was sixteen, and Moore was eighteen years old.

## I. *Pedophile Exception*

Moore first argues on appeal that the circuit court erred in allowing Jaden's and Jessica's testimony because his actions with them were too dissimilar to his alleged assault of MV to be admissible under the pedophile exception to Ark. R. Evid. 404(b). We disagree.

In making evidentiary decisions, the circuit court has broad discretion, and its decision will not be reversed absent an abuse of that discretion. *Duvall v. State*, 2018 Ark. App. 155, 544 S.W.3d 106. In order to find an abuse of discretion, this court must find that the circuit court acted improvidently, thoughtlessly, or without due consideration. *Id.*; *Washington v. State*, 2024 Ark. App. 134, 686 S.W.3d 61. This court further explained in *Washington* that

> even if a circuit court errs in admitting evidence, this court may affirm a conviction and deem the error harmless if the evidence of guilt is overwhelming and the error is slight. Prejudice is not presumed on appeal; and an assessment of prejudice must take into account that the uncorroborated testimony of a minor victim alone is substantial evidence to sustain a conviction for sex offenses.

2024 Ark. App. 134, at 9, 686 S.W.3d at 67 (citations omitted).

The general rule regarding the inadmissibility of other bad acts is Arkansas Rule of Evidence 404(b), which provides:

3

*Other Crimes, Wrongs, or Acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This court has recognized a pedophile exception to the general rule that evidence of other bad acts is not admissible to show that the accused acted in conformity therewith. *Duvall*, 2018 Ark. App. 155, 544 S.W.3d 106. In *Hortenberry v. State*, the supreme court explained the pedophile exception:

> The pedophile exception allows the State to introduce evidence of a defendant's similar acts with the same or other children when it is helpful in showing a proclivity for a specific act with the person or class of persons with whom the defendant has an intimate relationship. *E.g.*, *Hendrix v. State*, 2011 Ark. 122. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *E.g.*, *Flanery v. State*, 362 Ark. 311, 208 S.W.3d 187 (2005). There are two requirements for this exception to apply: (1) a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct, and (2) evidence of an "intimate relationship" between the defendant and the victim of the prior act. *See, e.g.*, *Rohrbach v. State*, 374 Ark. 271, 287 S.W.3d 590 (2008).

2017 Ark. 261, at 9–10, 526 S.W.3d 840, 846–47.

We first look at the degree of similarity between the evidence the State presented through Jessica and Jaden and the crime with which Moore was charged. Moore asserts that the circuit court should not have allowed Jessica to testify because she was sixteen years old when he allegedly raped her, whereas MV was only seven years old. Moore goes on to argue that it is significant that when Moore allegedly raped MV, they were alone in his bedroom, but when he allegedly raped Jessica they were in his camper with other people present. He also points out the fact that alcohol was involved in the incident with Jessica, and there was

4

no evidence of alcohol consumption in the incident with MV. Moore asserts that although Jessica was not capable of consent due to intoxication, she was legally of an age to consent. These asserted differences are of little consequence to the similarity prong of the pedophile-exception test.

First, as pointed out by the State, for purposes of sex offenses, a minor is a person under the age of eighteen years. Ark. Code Ann. § 5-14-101(7) (Repl. 2024); *see also Craigg v. State*, 2012 Ark. 387, 424 S.W.3d 264. Thus, whether or not Jessica was over the age of legal consent is of no significance. Furthermore, the difference in Jessica's age and that of MV is not determinative. *See Craigg, supra.*

In *Craigg*, the supreme court affirmed the circuit court's admission of a prior conviction for a sex offense even though the prior conviction involved a four-year-old female, and the other involved a fourteen-year-old male; one offense occurred while the victim was asleep and the other while the victim was awake; and one offense occurred alone in the woods, while the other occurred in a house in which other people were present. The court stated that neither the age nor the gender of the victims mattered. The court also noted that in both situations, the accused isolated the victims from other adults or people in authority. We find the alleged offense against MV and the assault to which Jessica testified are even more similar to each other than the two offenses described in *Craigg*, in which the court found that the similarity factor had been met. Considering our precedent, the differences between Moore's alleged rape of MV and his alleged rape of Jessica are not so significant as

to warrant a determination that the circuit court abused its discretion in admitting Jessica's testimony.

Concerning Jaden's testimony, Moore argues that it was erroneous to admit her testimony because she did not testify that Moore raped her; rather, she testified that he touched her vagina on several occasions. The fact that he touched her rather than raped her is of no moment for purposes of the pedophile exception. *See Swift v. State*, 363 Ark. 496, 499–500, 215 S.W.3d 619, 622 (2005) ([T]hough the specific acts complained of are not identical, we have previously held that allegations of vaginal touching are admissible in cases of vaginal or oral penetration to show the defendant's attraction to the characteristics of young children.").

The similarity requirement of the pedophile exception was met with respect to both witnesses. MV, Jaden, and Jessica share the commonality of familial relationships with Moore. According to the evidence adduced at trial, when Moore was eighteen, he raped MV, who was seven years old, waking her from a sound sleep to do so, while she was alone in his bedroom at his parents' house. Jaden testified that Moore, who was eighteen at the time, molested her in his camper while the only others present were intoxicated minors. Again, at age eighteen, Moore raped his younger cousin Jessica in his camper after serving her so much alcohol that she blacked out and became defenseless.

Now turning to the second requirement for the pedophile exception to apply, the supreme court explained in *Kelley v. State*:

> We have noted that the misnomer, "intimate relationship," does not necessarily require that the child live in the home of the accused. We have defined an "intimate relationship," for lack of a better phrase, as close in friendship or acquaintance, familiar, near, or confidential. We have admitted the testimony of a child living in the same household or staying as an overnight guest in the perpetrator's home. We further have admitted evidence against a perpetrator who babysat a child, or who gained access to the child.

2009 Ark. 389, at 10, 327 S.W.3d 373, 379 (quoting *Parish v. State*, 357 Ark. 260, 270, 163 S.W.3d 843, 849 (2004)).  In the case before us, the intimate relationship between the two witnesses and Moore is present. The two witnesses were younger cousins of Moore who testified that they spent a significant amount of time with him, often in his home or bedroom, and that they trusted him.  Jaden and Moore lived in the same household part of the time, although Moore technically lived in a camper in the yard of the house in which Jaden slept.   Both victim witnesses trusted Moore and were allowed to spend time alone with him. Considering the evidence at trial, the intimate-relationship factor was met: an intimate relationship existed between Moore and the victim witnesses of the prior acts.

We cannot say the circuit court acted "improvidently, thoughtlessly, or without due consideration" in admitting Jessica's and Jaden's testimony under the pedophile exception to Arkansas Rule of Evidence 404(b). In fact, the circuit court discussed the pedophile exception and applied the intimate-relationship and similar-factors analysis before making its decision.  The court did not abuse its discretion. We also note that even if this testimony was admitted in error, it was not prejudicial as would be required for reversal. MV's testimony alone was sufficient to support Moore's conviction. *See Washington*, 2024 Ark. App. 134, 686 S.W.3d 61.

7

For his second point on appeal, Moore argues that the circuit court erroneously allowed Jaden to testify because the State did not properly disclose her as required by Arkansas Rule of Criminal Procedure 17.1(a). We disagree.

The record reveals that the State provided Moore's trial counsel its entire file in November 2022. Jaden's name was in the file, but the information pertaining to her at that time concerned her eyewitness account of the events surrounding Moore's raping Jessica. Twelve days before trial, on October 4, 2023, the State subpoenaed Jaden; the subpoena contained her telephone number. On the same day, the State filed a notice to introduce new evidence pursuant to Arkansas Rule of Evidence 404(b), which included Jaden's name.

At trial, Moore's attorney objected to Jaden being allowed to testify on the basis that he was not provided with her address and did not have any reports indicating what her testimony would be. The State responded that no written reports existed[2] but that it had informed Moore's attorney of the content of Jaden's anticipated testimony. The following exchange then took place:

> [PROSECUTOR]: Are you denying that when we spoke last week and you asked for a CACD report, I told you that she would testify that he molested her from five to 10, you're denying that to the Court right now?
>
> [DEFENSE]: No, I'm not denying that.

---

[2]Jaden testified that she had never reported the sexual molestation by Moore because it was "humiliating."

8

The circuit court found that the State had committed a discovery violation but ruled that it would allow Jaden's testimony after a recess to allow defense counsel to interview her. Moore's attorney then interviewed Jaden for an hour. At the conclusion of the trial, after the jury had reached its verdict but before it was announced, Moore's attorney moved for a mistrial "due to late disclosure of witness list." The court denied the motion.

Moore now argues that the State did not provide him with any contact information, reports, or statements pertaining to Jaden. Accordingly, the argument goes, he had no ability to contact this witness or know what her testimony would be. Factually, this argument is incorrect. The State provided Moore's counsel with Jaden's name a year before trial, and he had her telephone number twelve days before trial. And, as he admitted at trial, the prosecuting attorney had informed him that Jaden's testimony would be that Moore had begun molesting her when she was five years old. Finally, at trial, Moore's attorney was given at least an hour to privately interview Jaden.

Turning to the applicable rules, Arkansas Rule of Criminal Procedure 17.1 states in pertinent part:

> (a) Subject to [unrelated provisions], the prosecuting attorney shall disclose to defense counsel, upon timely request, the following material and information which is or may come within the possession, control, or knowledge of the prosecuting attorney:
>
> (i) the names and addresses of persons whom the prosecuting attorney intends to call as witnesses at any hearing or at trial;

The standard of review on discovery-sanction decisions is well established:

The standard of review for imposing sanctions for discovery violations is whether there has been an abuse of discretion. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. It is within the circuit court's discretion which sanction, if any, to employ. Furthermore, a reversible discovery violation will occur only if a defendant is prejudiced by the prosecutor's failure to disclose. In order to show prejudice, an appellant must demonstrate a reasonable probability that the result would have been different had the information been disclosed. Under these standards, appellant has the burden to show that the omission was sufficient to undermine the confidence in the outcome of the trial.

*Gitchell v. State*, 2023 Ark. App. 503, at 9–10, 678 S.W.3d 621, 628 (citations omitted).

Here, the State provided Moore with Jaden's name and telephone number. Moore does not argue that the State possessed Jaden's address or point to any evidence that the State had it and did not give it to him. Pursuant to Rule 17.1, the State is required to give the defendant only what comes "within the possession, control, or knowledge of the prosecuting attorney" Ark. R. Crim. P. 17.1(a). The State is not required to provide what it does not have. The evidence before us is that the State had Jaden's telephone number and provided that to Moore.

As to written reports and statements made by Jaden, the prosecuting attorney asserted on the record that the State did not have written reports pertaining to Jaden's anticipated testimony of molestation, and Jaden testified that she had never reported it because it was humiliating. However, the State did possess knowledge of the expected testimony. Moore's attorney admitted on the record that the prosecuting attorney had told him a week before trial what it expected the content of Jaden's testimony to be.

We disagree with the circuit court's finding that the prosecuting attorney committed a discovery violation. However, we agree with the circuit court's decision to admit Jaden's testimony after it recessed to allow Moore's attorney time to interview Jaden. When a court determines that a discovery violation has occurred, it can enter an order it deems appropriate under the circumstances. *See Nooner v. State*, 322 Ark. 87, 100, 907 S.W.2d 677, 684 (1995). An appropriate remedy is to allow the defendant time to interview the witness. *Id.*; *see also Arnold v. State*, 2018 Ark. App. 22, 540 S.W.3d 298. In this case, the record shows that Moore's attorney interviewed Jaden for at least an hour. The court's recess to allow Moore's attorney to interview Jaden was a sufficient remedy for any perceived discovery shortcoming with regard to Jaden.

Even if the State did commit a discovery violation and even if it was not cured by the recess for Moore's attorney to interview the witness, for reversal Moore must show that he was prejudiced by the violation. To do this, he must demonstrate a reasonable probability that the trial result would have been different but for the discovery violation. *See Gitchell*, *supra*. Moore has not demonstrated such prejudice.

For the reasons stated, we affirm Moore's conviction and the resulting sentence.

Affirmed.

WOOD and MURPHY, JJ., agree.

*Brian L. Johnson, Law Office*, by: *Brian L. Johnson*, for appellant.

*Tim Griffin*, Att'y Gen., by: A. *Evangeline Bacon*, Ass't Att'y Gen., for appellee.